UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT J. SNOOK,

       Case No. 07-14270

   Plaintiff,

       Hon. Victoria A. Roberts

v.

OAKLAND COUNTY DEPUTY SHERIFF T. LOREY,
OAKLAND COUNTY DEPUTY SHERIFF R. MEZA,
OAKLAND COUNTY DEPUTY SHERIFF MOERSCHELL,
and OAKLAND COUNTY DEPUTY SHERIFF HUBBLE,

   Defendants.

_____/

## ORDER GRANTING MOTION TO
## ENFORCE UNCONDITIONAL SETTLEMENT

**I.   INTRODUCTION**

This matter is before the Court on Defendants' Motion to Enforce Unconditional Settlement [Doc. 64].  The Court **GRANTS** the Motion.

**II.  BACKGROUND**

This case arose out of Plaintiff Robert Snook's claims of assault and battery, wilful and wanton misconduct, intentional infliction of emotional distress, and 42 U.S.C. §1983 deprivation against four Oakland County sheriff deputy Defendants -- T. Lorey, R. Meza, Moerschell, and Hubble.  Plaintiff alleged he was injured in an unprovoked attack by the deputies at the Oakland County Jail.

On June 18, 2009, the parties participated with the Court in a settlement conference.  The result was a potential settlement where Defendants would pay Plaintiff

the sum of $75,000.00. Under the proposed agreement, Plaintiff was required to satisfy a Medicare lien for medical care and treatment he received related to his injuries. The exact amount of the lien was unknown. Plaintiff wished to confirm that he would pay no more than $10,000.00 to satisfy the lien, and no settlement was placed on the record on that date.

Between June 24 and July 8, 2009, both counsel engaged in discussions via email and telephone conferences with the Court regarding the Medicare lien.

Around July 6, 2009, Plaintiff counsel (Budaj) received correspondence from the Centers for Medicare and Medicaid Services ("CMS") indicating that the Medicare lien was $3,254.14; the letter advised that CMS was still investigating the file and that the number was not a final listing of payments.

On July 7, 2009, Budaj sent the Court an email stating: "this will serve to confirm our phone conversation this morning wherein I advised you that because the Medicare claim is less than $10,000.00 the settlement will go forward as previously agreed between the parties and the court."

On July 8, 2009, Defendants' counsel (Lerminiaux) forwarded to Budaj a Release of all Claims ("Release") and Stipulation and Order of Dismissal; the Release did not contain a provision that the settlement was conditioned on the amount of the Medicare lien. The only objection voiced by Budaj was the inclusion of the U.S. Treasury as a payee on the check.

Later that day, Lerminiaux forwarded revised settlement documents to Budaj. Those documents included a modified Release which deleted the requirement that the U.S. Treasury be named a payee, and an Agreement Regarding Disbursement of

Settlement Proceeds and Resolution of Medicare Lien ("Medicare Lien Agreement"). The Medicare Lien Agreement required Budaj to withhold $10,000.00 from the settlement proceeds to resolve the Medicare lien and to remit the balance to Plaintiff when the lien was resolved.

Also on July 8, 2009, Budaj told Lerminiaux via email, that the revised documents looked acceptable and "I will get them signed as soon as possible and get them back to you."

On July 17, 2009, Budaj told Lerminiaux that Plaintiff did not want to sign the Release and Stipulated Order because the documents were not conditioned on resolution of the Medicare lien in Plaintiff's favor.

After the parties failed to reach a resolution, Defendants filed this Motion.

### III. ANALYSIS

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.), cert. denied, 429 U.S. 862, 97 S. Ct. 165, 50 L. Ed. 2d 140 (1976). In fact, a district court has the inherent power to enforce an agreement entered into in settlement of pending litigation even if that agreement has not been reduced to writing. *Bowater N. Am. Corp. V. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985).

The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in policy favoring settlement of disputes and the avoidance of costly and time-consuming litigation. *Kukla v. National Distillers Prods., Co.*, 483 F.2d 619, 621 (6th Cir. 1973). Before enforcing a settlement agreement, however, a district court must

conclude that the parties reached an agreement on all materials terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). Once the district court finds that there is an agreement on the material terms, the court must enforce those terms and may not alter them. *Id.*

There is no dispute between the parties regarding the settlement amount or whether there was a settlement agreement; they agree that Plaintiff was to settle his claim against Defendants for $75,000.00. They also agree that Plaintiff was to pay the Medicare lien from the settlement proceeds. The point of contention is when the settlement agreement was made and whether it was conditional or unconditional.

Plaintiff says the settlement agreement was made on June 18, 2009 and was conditioned upon the Medicare lien being less than $10,000.00. Budaj says Lerminiaux's subsequent emails were an attempt to change the agreement by adding an unconditional element. In the alternative, Plaintiff argues that even if the Court finds that an unconditional agreement was made, or that the exchange of emails between counsel changed the agreement from a conditional settlement to an unconditional settlement, it should be set aside due to a mistake of fact. Plaintiff contends the "mistake of fact" was whether the preliminary medicare lien amount constituted the final medicare lien amount.

Defendants, on the other hand, contend that no definitive settlement was reached on June 18, 2009, and accordingly no official court record was made at Plaintiff's request. Defendants say there was a condition precedent to settlement (i.e., that Plaintiff could satisfy himself that the Medicare lien was less than $10,000.00), which they advised Plaintiff had to be removed by the close of business on July 8, 2009

4

or the settlement offer would be withdrawn.  Defendants argue that Budaj unconditionally accepted the settlement offer on July 8, 2009, when he approved the second draft of documents prepared by Defendants.

The Court is persuaded that no settlement agreement was reached on June 18, 2009.  Instead, there was a tentative agreement to settle the claim for $75,0000.00, which did not become effective because there was an unfulfilled condition precedent – Plaintiff had to verify that the Medicare lien was less than $10,000.00. See *Graley v. Yellow Freight Sys.*, 2000 U.S. App. LEXIS 14085, No. 98-4166, 2000 WL 799779, at *7 (6th Cir. June 14, 2000) (noting that an agreement is unenforceable if it is "subject to some condition or reservation which was never met"). This is evidenced by the fact that the parties placed no settlement on the record after the June 18, 2009 settlement conference -- a normal occurrence when parties reach a final settlement.  This is further evidenced by Lerminiaux's June 24, 2009 email in which he states to Budaj, "If we don't have a settlement by [close of business] on 7/8 then we don't have a settlement."  See *Doc. 64, Exh. 1*.  Notably, there is no reply email from Budaj disputing the contention that there was not yet any settlement.

On the other hand, the Court finds that an unconditional settlement agreement was reached on July 7, 2009, when Budaj emailed the Court to say that because the Medicare claim was less than $10,000, the settlement would go forward as previously agreed; he sent a carbon copy of this email to Lerminiaux. See *Doc. 64, Exh. 3*. Contrary to Plaintiff's assertions now, there is no indication in the email that the settlement was contingent upon receipt of a final lien amount.  Thus, the condition precedent, the only remaining material term, was met.

5

Both counsel participated in the negotiation of the written draft of the settlement agreement. The first proposed version of the Release, drafted by Lerminiaux and sent to Budaj via email on July 8, 2009 at 11:29 a.m., included a provision that the settlement draft would be made jointly payable to Plaintiff, Budaj and the United States Treasury. Budaj voiced objection to that provision. In Budaj's 12:04 p.m. email, he stated that he would withhold $10,000.00 from the settlement proceeds to hold in his trust account until he received the final Medicare lien amount, and that a separate agreement should be drafted to this effect. See *Doc. 64, Exh. 7*.

Lerminiaux sent the second proposed version of the Release to Budaj via email at 1:44 p.m. It deletes the provision adding the United States Treasury as a payee on the settlement draft and instead obligates Plaintiff to satisfy all liens from the settlement proceeds. See *Doc. 64, Exh. 5*. The separate Medicare Lien Agreement was sent with the Release; it specifically states that Plaintiff and his attorneys asked that the United States Treasury not be made a payee on the settlement draft, and in consideration of that agreement, Budaj would withhold and place in his trust account $10,000.00 to satisfy the Medicare lien. *Id.*

Budaj replied at 3:14 p.m., stating unequivocally that the documents looked acceptable and he would get them signed and returned as soon as possible. See *Doc. 64, Exh. 6*. Again, there is no indication that acceptance was contingent upon approval by Plaintiff or receipt of a final lien amount.

It appears that problems arose when Budaj presented the negotiated documents to his client for signature. On July 17, 2009, based on concerns raised by Plaintiff, Budaj asks for the first time to add the following conditional language to the agreement:

6

> "The settlement is conditioned on the final amount due the Centers for Medicare and Medicaid Services for reimbursement of Medicare payments made related to the injury involved in this matter not exceeding $10,000. It is understood and agreed between the parties that upon entering into this settlement the claimant or the claimant's attorney will request a final demand letter from the Medicare Secondary Payer Recovery Contractor for reimbursement of Medicare. If the final demand for reimbursement exceeds $10,000.00, the release and settlement agreement shall be null and void and the parties will return to the same position they were in prior to the settlement."

See *Doc. 64, Exh. 8*. On the same date, Lerminiaux rejected this proposed revision as contrary to the earlier unconditional agreement. See *Doc. 64, Exh. 9*.

Defendants are entitled to enforce the unconditional settlement agreement, pursuant to *Capital Dredge and Dock Corp. v. City of Detroit*, 800 F.2d 525 (6th Cir. 1986). In *Capital Dredge*, the Sixth Circuit applied the rule on apparent authority, that "a third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting contrary to the client's express instructions." *Id.* at 530.

These Defendants reasonably relied on Budaj's apparent authority to negotiate the settlement on Plaintiff's behalf, when on July 7, 2009, they reached an unconditional agreement to settle Plaintiff's pending lawsuit. The subsequent emails between the parties were nothing more than negotiations to hammer out language consistent with the earlier agreement. The language in the Release and Medicare Lien Agreement is consistent with the unconditional agreement contemplated in the parties' July 7, 2009 and July 8, 2009 emails. Accordingly, Plaintiff is bound to the settlement agreement negotiated by his lawyer.

The was no mistake of fact regarding whether the preliminary medicare lien

amount constituted the final medicare lien amount. None of the parties' written correspondence supports the conclusion that the preliminary lien letter was misidentified as the final lien letter, or that any settlement was contingent upon receipt of a final lien letter. The Court rejects Plaintiff's request to set aside the settlement agreement.

## IV.    CONCLUSION

The Court **GRANTS** Defendant's Motion to Enforce Unconditional Settlement. The Court orders Plaintiff and his counsel to: (1) execute a Release of all claims for $75,000.00, (2) execute the Medicare Lien Agreement, and (3) stipulate to an Order dismissing Plaintiff's claims with prejudice and without interest, costs or attorney fees to any party, within 14 days of entry of this Order.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 25, 2009

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 25, 2009.

s/Linda Vertriest
Deputy Clerk

---